UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK

In Re:

    Deanna J. Gill,                                        Case No. 14-21173
                                                                Chapter 7

                Debtor.

**DECISION AND ORDER
DENYING MOTION TO REOPEN CHAPTER 7 CASE**

PAUL R. WARREN, United States Bankruptcy Judge

      Before the Court is a motion by Deanna J. Gill ("Debtor") seeking to reopen her Chapter 7 case, in order to bring a contested matter to seek sanctions against ESL Federal Credit Union ("ESL") for an alleged violation of her discharge injunction (ECF No. 29). The alleged "patent violation" of the discharge injunction under 11 U.S.C. § 524(a)(2) consists of a single preforeclosure notice issued by ESL—a secured creditor with a mortgage lien on real property that is the Debtor's principal residence (ECF No. 29 ¶ 16 ). The offending notice contains the exact language that is statutorily mandated by New York Real Property Actions and Proceedings Law § 1304 ("RPAPL") (ECF No. 29, Exhibit B ¶ 16 and Exhibit D). The discharge injunction does not prevent a secured creditor from enforcing its mortgage lien *in rem* once the stay terminates—and, under New York law, a foreclosure action against a mortgagor's principal residence requires a preforeclosure notice in compliance with RPAPL § 1304. The New York preforeclosure notice is not a demand for payment, but an informational foreclosure avoidance notice. The Debtor has not demonstrated cause to reopen under 11 U.S.C. § 350(b) because she would not prevail on her proposed sanctions claim if her Chapter 7 case was reopened. As a result, the Debtor's motion to reopen the closed case is **DENIED**.

# I.
## JURISDICTION

The Court has jurisdiction of this matter under 28 U.S.C. §§ 157(a), 157(b)(1) and 1334. This is a core proceeding under 28 U.S.C. § 157(b)(1). This decision constitutes the Court's findings of fact and conclusions of law to the extent required by Rule 7052 FRBP.

# II.
## QUESTIONS PRESENTED

The first issue is whether the Debtor has demonstrated cause, under 11 U.S.C. § 350(b), for reopening her closed Chapter 7 case. The second question—necessarily arising out of factors to be considered in resolving the first question—is whether the delivery of the statutorily mandated preforeclosure notice under New York RPAPL § 1304 by the lender of a home loan, secured by a mortgage lien on the Debtor's principal residence, can serve as the basis to award sanctions against the mortgagee for a violation of the discharge injunction arising from 11 U.S.C. § 524(a). The answer to both questions is no.

# III.
## FACTS

The Debtor filed a voluntary petition for Chapter 7 relief on September 18, 2014 (ECF No. 1). Schedule A lists real property located at 274 Briarwood Lane, Scottsville, New York as her only real property (ECF No. 1, Schedule A). The Debtor listed a value of $112,000 for the property, subject to two mortgage liens held by ESL, with combined principal balances of over $95,000 (ECF No. 1, Schedules A and D; ECF No. 35, Exhibit A ¶ 2 and attachments). In the Statement of Intention, filed with the petition, the Debtor listed both ESL mortgages and indicated her intention to reaffirm both loans secured by those

2

mortgages (ECF No. 1, Official Form 8 at 29). The Debtor did not reaffirm or attempt to reaffirm the ESL debts, contrary to her stated intentions (ECF No. 35, Exhibit A ¶ 12). The Debtor continues to occupy the property as her principal residence (ECF No. 36). However, she admits that she has not made any mortgage payment to ESL since October 2014 (ECF No. 40).

On October 28, 2014, the Chapter 7 Trustee filed a Report of No Distribution, commonly referred to as a "No Asset Report" (ECF No. 8). On January 6, 2015, the Court entered an Order of Discharge (ECF No. 16).[1] A Final Decree was entered by the Court and the bankruptcy case was closed on February 6, 2015 (ECF No. 18). Later that same day, but after the case was closed, counsel for the Debtor filed a motion seeking sanctions for an alleged violation of the discharge injunction (ECF No. 19). The alleged violation consisted of a notice from ESL to the Debtor, dated January 22, 2015, and addressed to her residence (ECF No. 29, Exhibit D). The first paragraph of the notice stated: "As of 1/22/2015, your home loan is 32 days in default. Under New York State law, we are required to send you this notice to inform you that you are at risk of losing your home. You can cure this default by making payment of $4,534.12 by 02/06/2015" (*Id.*). Although not provided to the Court, the notice included an attached list of government-approved housing counseling agencies, as well as contact information for the New York State Department of Financial Services (*Id.*). The Debtor contacted her attorney immediately upon receiving the ESL notice (ECF No. 29 at 15).

Because the case had been closed prior to filing the sanctions motion, the Clerk of Court notified counsel that a motion to reopen the case was required before the Court would consider the sanctions

---

[1] Entry of the discharge order was delayed because the Debtor brought an earlier unrelated sanction motion against ESL, alleging a violation of the automatic stay in connection with a notice sent by ESL during the pendency of the case. The parties resolved that matter without the Court's involvement. The only relevant notice at issue in the motion before the Court is the letter dated January 22, 2015 (ECF No. 29, Exhibit D).

3

motion (ECF No. 21). Counsel filed an *ex parte* motion to reopen the bankruptcy case (ECF No. 22). At the Court's direction, an amended motion was filed, on notice to ESL (ECF No. 29).[2] ESL filed opposition to the motion to reopen, arguing that the Debtor had failed to demonstrate cause and that no purpose would be served by granting the motion to reopen because ESL's notice—mandated by New York RPAPL § 1304(1) and permitted by logical extension of 11 U.S.C. § 524(j)—could not serve as the basis to grant sanctions relief in favor of the Debtor (ECF No. 35).

The Court heard initial oral argument on the Debtor's motion on March 19, 2015. The Debtor argued—without pointing to any legal authority—that the Court should find that New York RPAPL § 1304(1) was an improper impingement on 11 U.S.C. § 524(a)(2). Alternatively, counsel argued that ESL, or any lender with a home loan secured by a debtor's principal residence located in New York, should simply delete the entire first paragraph of the legislatively mandated notice under New York RPAPL § 1304(1). Counsel did concede that the Debtor had failed to make any mortgage payments to ESL since October 2014, that she did not reaffirm the debt, that she had no intention of making any further payments on the mortgage, that the Debtor continued to reside at the property, and that ESL had the right to foreclose its mortgage (ECF No. 40, Mar. 26, 2015 Hearing). ESL observed that it was statutorily required, as a mandatory precondition to commencing a foreclosure action on the Debtor's

---

[2] The motion was originally brought as an *ex parte* application, with notice provided only to the former Chapter 7 Trustee and the U.S. Trustee (ECF No. 22). The Court required the Debtor to serve an amended motion, on notice to the party against whom relief would be sought, under Rules 5010 and 9014 FRBP, to ensure that party had reasonable notice and an opportunity to be heard on the threshold issue of whether "cause" to reopen exists. Where a motion to reopen a closed bankruptcy case is brought, the Court expects the motion to be brought on notice to any party against whom affirmative relief will be sought. Fundamental fairness and due process are not well-served if the issue of cause under 11 U.S.C. § 350(b) is addressed in a vacuum.

principal residence, to send the notice under RPAPL § 1304. The motion was adjourned to March 26, 2015, to afford counsel an opportunity to further brief the issue (ECF No. 36).

On March 23, 2015, ESL submitted a supplemental memorandum of law, citing authority to support its position that in order to foreclose its mortgage on the property, it was statutorily obligated to comply with RPAPL § 1304 (ECF No. 37). That same day, the Debtor submitted a memorandum of law, by which the Debtor now took the position that the ESL preforeclosure notice should have included additional bankruptcy-disclaimer language, without which the Debtor asserted the statutorily mandated RPAPL § 1304 notice was *per se* sanctionable as an improper demand for payment of a discharged debt (ECF No. 38).

On March 26, 2015, the Court heard final oral argument from both parties (ECF No. 40). Prior to the hearing, ESL submitted a second memorandum of law, responding to the Debtor's memorandum of law (ECF No. 39). At the conclusion of the hearing, the Court set April 6, 2015 as the date for final submissions by the parties on the legal issues (ECF No. 40). The Debtor submitted a supplemental memorandum of law (ECF No. 41). ESL filed the affidavit of Jeremy Newman, its associate general counsel (ECF No. 42) and a third supplemental memorandum of law (ECF No. 43). Debtor's counsel filed a letter, criticizing the Newman affidavit, but adding nothing of substance (ECF No. 44). The submissions are now complete and the issues are ripe for determination.

### IV.

### ARGUMENTS

The Debtor contends that, despite having been notified of the Debtor's discharge, ESL's correspondence was an attempt to collect a discharged debt in "patent violation" of 11 U.S.C. § 524(a)(2) (ECF No. 29 ¶ 16 ). At oral argument, the Debtor conceded that the offensive ESL notice precisely

5

tracked the statutory language mandated by RPAPL § 1304 (ECF No. 38 at 3). The Debtor also conceded that ESL was required to comply with RPAPL § 1304 as a condition precedent to a foreclosure action (*Id.* at 3, 8). However, the Debtor argues that RPAPL § 1304 does not prohibit the addition of bankruptcy-disclaimer language (*Id.* at 5). The Debtor argues that such language would bring the notice mandated by state law in compliance with the Bankruptcy Code (*Id.* at 15-16). The Debtor further contends that—even though not required by the prescribed statutory notice language—the ESL notice was also infirmed because it did not indicate that the 90-day standstill period under RPAPL § 1304 did not apply because the Debtor had obtained an Order for Relief (*Id.*). The Debtor argues that the issuance of the statutorily mandated preforeclosure notice is a *per se* violation of the discharge injunction because the notice did not specifically state that ESL was not attempting to collect the underlying debt as a personal liability of the Debtor (ECF No. 37).

ESL argues that no purpose would be served in reopening the case (ECF Nos. 35, 39). As a home loan lender, ESL was statutorily required by RPAPL § 1304(1) to send the notice as a precondition to exercising its right to commence a foreclosure action (ECF No. 35). Therefore, the Debtor's anticipated sanctions motion could not serve as the basis to grant relief, because ESL sent the notice in strict compliance with the New York foreclosure statute (*Id.*). ESL contends that—in any event—the statutory notice is merely informational, providing a consumer-mortgagor with an opportunity to cure a default on a mortgage to avoid commencement of a foreclosure action (ECF No. 40). ESL argues that RPAPL § 1304 has been strictly construed by the New York Courts (ECF No. 39 at 3). ESL observes that, contrary to the Debtor's view, RPAPL § 1304(1) does not include a requirement for bankruptcy discharge disclaimer language (*Id.* at 2). Absent proof of strict compliance with RPAPL § 1304, ESL contends that its eventual foreclosure proceeding would be summarily dismissed (*Id.*). In addition, ESL argues that Congress codified a "safe harbor" for residential mortgage lenders, by permitting communications between

6

residential mortgagees and mortgagor-debtors after discharge, in enacting 11 U.S.C. § 524(j) as part of BAPCPA (ECF Nos. 35, 39). In ESL's view, the safe harbor provision allows residential mortgage lenders to send statements in the ordinary course for presently due mortgage obligations, secured by a debtor's principal residence, instead of proceeding *in rem* (ECF Nos. 35, 39). ESL argues that the Debtor has not demonstrated cause to reopen her case, because the offending notice complied fully with the mandatory preforeclosure requirements established by the New York Legislature under RPAPL § 1304(1). Therefore, the RPAPL § 1304(1) notice cannot serve as the basis for a claimed violation of the discharge injunction (ECF Nos. 35, 43).

V.

**CONCLUSIONS OF LAW**

A. **The Debtor Has Failed to Demonstrate "Cause" to Reopen.**

The Bankruptcy Code vests bankruptcy courts with discretion to determine whether to reopen a closed case "to administer assets, *to accord relief to the debtor*, or for other cause." 11 U.S.C. § 350(b) (emphasis added); *see also* Rule 5010 FRBP. In determining whether "cause" exists to reopen a closed case, courts "may consider numerous factors including equitable concerns, and ought to emphasize substance over technical considerations." *In re Wiggins*, No. 12-13341, 2013 Bankr. LEXIS 3587, at *3 (Bankr. S.D.N.Y. Aug. 29, 2013) (quoting *In re Wilson*, 492 B.R. 691, 695 (Bankr. S.D.N.Y. 2013)); *see also In re Emmerling*, 223 B.R. 860, 864 (B.A.P. 2d Cir. 1997) (discussing cause to reopen for equitable concerns). The factors for the Court to consider include:

(1) the length of time that the case was closed;

(2) whether a nonbankruptcy forum has jurisdiction to determine the issue which is the basis for reopening the case;

(3) whether prior litigation in the bankruptcy court determined that a state court would be the appropriate forum;

(4) whether any parties would suffer prejudice should the court grant or deny the motion to reopen;

(5) the extent of the benefit to the debtor by reopening; and

(6) whether it is clear at the outset that no relief would be forthcoming to the debtor by granting the motion to reopen.

*Wilson*, 492 B.R. at 695.

Here, the Court finds that the last factor is determinative—if the Debtor would not be entitled to any relief, cause to reopen is absent. *See In re Chalasani*, 92 F.3d 1300, 1307 (2d Cir. 1996) (denying a motion to reopen where the relief sought after reopening would not be granted, therefore rendering the act of reopening meaningless); *see also In re Pennington-Thurman*, 499 B.R. 329, 332 (B.A.P. 8th Cir. 2013) (holding that it is appropriate for the Court to examine the merits of a proposed motion in considering a motion to reopen, and it is not an abuse of discretion to deny the motion to reopen where the proposed motion is lacking in merit); *Wiggins*, 2013 Bankr. LEXIS 3587, at *4. The Court necessarily turns its attention to the merits of the Debtor's proposed action to seek sanctions against ESL for an alleged violation of the discharge injunction under 11 U.S.C. § 524(a)(2).

B. **The Discharge Injunction Was Not Violated by the RPAPL § 1304(1) Preforeclosure Notice.**

The ultimate question for the Court is whether delivery of a preforeclosure notice by a lender of a home loan, secured by a mortgage on a Debtor's principal residence located in New York State—in full compliance with the statutory mandate under New York RPAPL § 1304—can serve as the basis to award sanctions against the mortgagee for a claimed violation of the discharge injunction arising from 11 U.S.C. § 524(a). A bankruptcy discharge "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset *any such debt as a*

*personal liability of the debtor*, whether or not discharge of such debt is waived." 11 U.S.C. § 524(a)(2) (emphasis added). The discharge injunction protects a fundamental policy of the Bankruptcy Code—providing honest but unfortunate debtors with a fresh start by being relieved of personal liability for their discharged debts. *See Green v. Welsh*, 956 F.2d 30, 33 (2d Cir. 1992); *see also In re Lemieux*, 520 B.R. 361, 364 (Bankr. D. Mass 2014); *In re Nassoko*, 405 B.R. 515, 521-22 (Bankr. S.D.N.Y. 2009). However, the bankruptcy discharge extinguishes *only* "the personal liability of the debtor." *Johnson v. Home State Bank*, 501 U.S. 78, 83 (1991) (holding that while the bankruptcy discharge extinguishes one "mode of enforcing a claim—namely, an action against the debtor *in personam*," it leaves "intact another—namely, an action against the debtor *in rem*"). A secured creditor's "right to foreclose on the mortgage survives or passes through the bankruptcy" and remains enforceable under state law. *Johnson*, 501 U.S. at 83; *see also Pennington-Thurman*, 499 B.R. at 332; *Mayton v. Sears, Roebuck & Co.*, 208 B.R. 61, 66-67 (B.A.P. 9th Cir. 1997); *In re Jones*, No. 08-05439, 2009 Bankr. LEXIS 4316, at *7-9 (Bankr. S.D. Ind. Nov. 25, 2009); *Drew v. Chase Manhattan Bank, N.A.*, 185 B.R. 139, 141-42 (Bankr. S.D.N.Y. 1995). The discharge injunction does not prohibit every communication between a creditor and debtor—"only those designed 'to collect, recover or offset any such debt as a personal liability of the debtor.'" *In re Whitaker*, No. 09-50301, 2013 Bankr. LEXIS 2328, at *23 (Bankr. E.D. Tenn. Nov. 25, 2013); *In re Brown*, 481 B.R. 351, 358 n.10 (Bankr. W.D. Pa. 2012); *see also* 11 U.S.C. § 524(a)(2).

The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), added Section 524(j) to the Bankruptcy Code to statutorily recognize the "ride through option" with respect to mortgage liens on real property.[3] *Bell*, 2014 Bankr. LEXIS 4717, at *15 n.5 (citing *In re Caraballo*, 386

---

[3] Courts have considered case law determining violations of the automatic stay under 11 U.S.C. § 362(a) as instructive in considering alleged violations of the discharge injunction under 11 U.S.C. § 524(a), given the statutory similarities. As was aptly observed by Judge Davis, "[11 U.S.C.] § 524 is the post-discharge analogue of [11 U.S.C.] § 362." *In re Bell*, No. 14-60510, 2014 Bankr. LEXIS 4717,

9

B.R. 398, 401-02 (Bankr. D. Conn. 2008)); *Whitaker*, 2013 Bankr. LEXIS 2328, at *27. Section 524(j) "codif[ied] the so-called 'ride-through' option for distressed debtors who, with creditor assent, continue, post discharge, to pay their mortgages." *In re Sosa*, 443 B.R. 263, 268 (Bankr. D.R.I. 2011); *see also Whitaker*, 2013 Bankr. LEXIS 2328, at *27. Despite the discharge injunction, under 11 U.S.C. § 524(j), a mortgagee with a lien on a debtor's principal residence is permitted to send statements to a debtor in the ordinary course of business, instead of seeking *in rem* relief, permitting the debtor to pay the secured debt and keep the property. *Bell*, 2014 Bankr. LEXIS 4717, at *14; *Whitaker*, 2013 Bankr. LEXIS 2328, at *23; *see also In re Manning*, 505 B.R. 383, 387 (Bankr. D.N.H. 2014) (holding that a lender's requests that debtor become current and sign a reaffirmation agreement fall within the safe harbor under 11 U.S.C. § 524(j)).

The existence of the safe harbor provision, codified in 11 U.S.C. § 524(j), underscores the logical difficulty with the Debtor's position—that a mortgagee's act of sending a statutorily required preforeclosure informational cure notice is *per se* sanctionable under 11 U.S.C. § 524(a)(2), but an ordinary course statement sent by the same mortgagee, with a lien on a discharged debtor's principal residence, is permissible under 11 U.S.C. § 524(j). Here, as the mortgagee with a lien secured by the Debtor's principal residence, ESL would be protected by 11 U.S.C. § 524(j) if it elected to send a statement instead of proceeding *in rem*.[4] *See Manning*, 505 B.R. at 388. Here, because the Debtor

---

at *14 n.4 (Bankr. N.D.N.Y. Nov. 13, 2014) (Davis, J.) (citing *In re Fucilo*, No. 00-36261, 2002 Bankr. LEXIS 475, at *39 (Bankr. S.D.N.Y. Jan. 24, 2002)).

[4]  Although § 524(j) provides a safe harbor for mortgagees' "act[s] in the ordinary course of business," mortgagees must be careful to comply with the exact terms of § 524 (j). It has been held that a post-discharge preforeclosure complaint that includes a request for *in personam* relief is sanctionable. *See In re Jones*, No. 09-21945, 2012 Bankr. LEXIS 5156 (Bankr. E.D. Ky. Nov. 2, 2012) (holding that the mortgagee's post-petition foreclosure complaint violated the discharge injunction by seeking a personal judgment against the debtor). Similarly, it has been held that a post-discharge statement is actionable

10

admits that she has no intention of keeping the property and admits that she has not made a mortgage payment since at least October 2014, ESL has the right to proceed with a foreclosure action—and that foreclosure action must comply with New York law in all respects. *See Wiggins*, 2013 Bankr. LEXIS 3587, at *6 (holding that a lender is not prevented after discharge from foreclosing on a lien that remains in default); *see also Manning*, 505 B.R. at 388 (holding that the discharge injunction "does not enjoin a secured creditor from recovering on valid prepetition liens, which, unless modified or avoided, ride through bankruptcy unaffected and are enforceable in accordance with state law").

It is New York law, not federal bankruptcy law, that governs the particular manner in which a mortgagee with a lien on real property in New York is to proceed with a foreclosure action. Generally, property interests and rights are established by state law, not bankruptcy law, absent an overriding bankruptcy purpose. *Butner v. United States*, 440 U.S. 48, 55 (1979). "The general welfare of society is involved in the security of the titles to real estate," and the very "power to ensure that security 'inheres in the very nature of [state] government.'" *BFP v. Resolution Trust Corp.*, 511 U.S. 531, 544 (1994).

In 2010, the New York Legislature enacted RPAPL § 1304, titled the Foreclosure Prevention, Tenant Protection and Property Maintenance Act of 2009, as a consumer protection statute "in response to the mortgage foreclosure crisis." *Kearney v. Kearney*, 42 Misc. 3d 360, 366-67 (N.Y. Sup. Ct. Monroe Cnty. 2013) (Dollinger, J.). RPAPL § 1304(1) requires that home loan lenders, with a mortgage lien on a borrower's principal residence, serve a specific written cure notice as a "condition precedent" to the

---

where the mortgagee goes beyond the bounds created by 11 U.S.C. § 524(j). *See In re Tucker*, No. 12-71910, 2015 Bankr. LEXIS 614 (Bankr. W.D. Va. Feb. 27, 2015) (finding a violation of the discharge injunction where the statement included an acceleration clause and demanded payment immediately); 4 *Collier on Bankruptcy* ¶ 524.09 (16th ed.).

commencement of a foreclosure action.[5] RPAPL § 1304(1); *Kearney*, 42 Misc. 3d at 367; *see also U.S. v. McDermott,* No. 11-CV-6232 CJS, 2012 U.S. Dist. LEXIS 31020, at *2 (W.D.N.Y. Mar. 6, 2012) (Siragusa, J). The overwhelming majority of New York Courts have held that the failure to comply with RPAPL § 1304 "permits—if not requires—dismissal of the [foreclosure] action." *Kearney*, 42 Misc. 3d at 368; *see Deutsche Bank Nat'l. Trust Co. v. Spanos*, 102 A.D.3d 909 (N.Y. App. Div. 2d Dept. 2013); *Cadelrock Joint Venture, L.P. v. Callender*, 41 Misc. 3d 903 (N.Y. Sup. Ct. Kings Cnty. 2013); *Aurora Loan Servs., LLC. v. Weisblum*, 85 A.D.3d 95 (N.Y. App. Div. 2d Dept. 2011); *see also McDermott*, 2012 U.S. Dist. LEXIS 31020, at *2.

Specifically, New York RPAPL § 1304(1) requires that mortgagees with loans covered by the statute must provide the borrower with a 90-day "cure notice" to inform the borrower of options available to avoid foreclosure. Here, the Debtor candidly concedes that ESL's mortgage is covered by RPAPL § 1304. The statutorily mandated notice must include the words "[u]nder New York State law, we are required to send you this notice to *inform* you that you are at risk of losing your home. You *can* cure this default by making a payment of $____ by ____." RPAPL § 1304(1) (emphasis added). Although RPAPL § 1304(3) provides a limited exception when a "borrower has filed an application for the adjustment of debts . . . or an order for relief from the payment of debts," the plain language of that exception only serves to eliminate the 90-day notice period; it does not relieve a mortgagee of its obligation to comply with the other mandatory provisions of RPAPL § 1304. *See Bank of America v. Maharaj*, No. 5804-2010, 2010 N.Y. Misc. LEXIS 4634, at *2 (N.Y. Sup. Ct. Suffolk Cnty. Sept. 21,

---

[5] RPAPL § 1304(1) defines a "home loan" as an "open-end credit plan, other than a reverse mortgage transaction, in which: (i) the borrower is a natural person; (ii) the debt is incurred by the borrower primarily for personal, family, or household purposes; (iii) the loan is secured by a mortgage or deed of trust on real estate; and (iv) the property is located in this state." New York RPAPL § 1304(1).

12

2010); *GMAC Mortg. LLC v. Munoz*, No. 2103-2010, 2010 N.Y. Misc. LEXIS 4398, at *4-5 (N.Y. Sup. Ct. Suffolk Cnty. Sept. 9, 2010); *Butler Capital Corp. v. Cannistra*, 26 Misc. 3d 598, 607 (N.Y. Sup. Ct. Suffolk Cnty. 2009).

In *Aurora Loan Services,* the Appellate Division, Second Department explained the purpose of the notice requirement imposed by RPAPL § 1304:

> Since RPAPL § 1304 notice must be sent at least 90 days prior to the commencement of an anticipated foreclosure action, its manifest purpose is to aid the homeowner in an attempt to avoid litigation. *The legislative history noted a typical lack of communication between distressed homeowners and their lenders prior to the commencement of litigation, leading to needless foreclosure proceedings. The bill sponsor sought "to bridge that communication gap in order to facilitate a resolution that avoids foreclosure" by providing a preforeclosure notice advising the borrower of "housing counseling services available in the borrower's area" and an "additional period of time . . . to work on a resolution."*

*Aurora Loan Servs.,* 85 A.D.3d at 106l (citing Senate Introducer Mem. in Support, Bill Jacket, L 2008, ch. 472, at 10) (emphasis added). The statute not only allows the creditor to move forward with a foreclosure action, but also affords the borrower the choice to cure the default, avoid foreclosure, and retain the home. *See id.* at 103 (stating that the "specific, mandatory language [is] in keeping with the underlying purpose of HEPTA to afford greater protections to homeowners confronted with foreclosure").

Here, the Debtor admits that ESL has the right to foreclose its mortgage on her principal residence. The Debtor admits that she has been in default under the mortgage for over six months. The Debtor admits that she has no intention of paying ESL on account of the mortgage. The Debtor admits that ESL's notice used the precise language required by RPAPL § 1304. The Debtor argues, however, that because the legislatively mandated notice includes the words "*can . . . make payment*" and does not contain words indicating that the notice is not an attempt to proceed with collection actions against the Debtor *personally*, any mortgagee sending the required RPAPL § 1304(1) preforeclosure notice to a

13

mortgagor, who has received a discharge in bankruptcy, commits a *per se* violation of the discharge injunction.

The Debtor attempts to find support for her argument by citing a line of cases involving notices sent to debtors by mortgagees. *See e.g.*, *In re Tucker*, 516 B.R. 340 (Bankr. W.D. Va. 2014); *In re Mele*, 486 B.R. 546 (Bankr. N.D. Ga. 2013); *In re Grihalva*, No. 11-26893, 2013 Bankr. LEXIS 4057 (Bankr. D. Nev. Sept. 3, 2013); *Pearson v. Bank of America*, No. 3:12-cv-00013, 2012 U.S. Dist. LEXIS 94850 (W.D. Va. July 10, 2012); *Brown*, 481 B.R. at 362; *In re Curtis*, 332 B.R. 470 (Bankr. D. Mass 2005). Notably, none of the cases cited by the Debtor involve statutorily mandated preforeclosure notices. A common factor in the decisions that found the particular correspondence violated 11 U.S.C. § 524(a)(2) is that the correspondence included "a clear demand for payment, accompanied by coercion in the form of a threatened action or some other consequence for nonpayment or harassment to induce the debtor to pay." *See Bell*, 2014 Bankr. LEXIS 4717, at *7 (citing *In re Connor*, 366 B.R. 133, 138 (Bankr. D. Haw. 2007)); *see also Curtis*, 332 B.R. at 484-85. Courts have, however, distinguished situations where a lender is required by state law to send a preforeclosure notice from other forms of communications. *See Mele,* 486 B.R. at 558 (acknowledging that "in order to pursue *in rem* rights, rights that are expressly preserved and recognized in § 524, [the creditor] is required to provide certain notices and information to [the debtor]"); *see also Pennington-Thurman*, 499 B.R. at 332 (holding that the bankruptcy court correctly found no violation of the discharge injunction, because the lender was required by state law to give a "cure notice" as a precondition to commencing a foreclosure action, and noting that 11 U.S.C. § 524(j) permitted other communications between a mortgagee and mortgagor-debtor following entry of the discharge order, if specified statutory elements were present); *Bell*, 2014 Bankr. LEXIS 4717, at *13 (acknowledging the requirement that mortgagees send statutorily prescribed notices to mortgagors prior to *all* foreclosures in New York).

14

The legislative purpose of RPAPL § 1304 is to require mortgagees to inform borrowers of the ability to cure a default under a home loan, before commencing a foreclosure action. *Kearney*, 42 Misc. 3d at 376. The notice is both informational and statutorily required. *See Bell*, 2014 Bankr. LEXIS 4717, at *13; *see also Brown,* 481 B.R. at 350. The Debtor invites the Court to find that the notice—mandated by the New York State Legislature under RPAPL § 1304(1)—violates the federal bankruptcy discharge injunction because it does not contain language indicating that the notice is not an attempt to enforce the obligation against the borrower personally. The Court declines that invitation. Including so-called "disclaimer language" is not the magic pill that the Debtor would have this Court prescribe. Courts have found that where there is evidence of coercion or harassment, disclaimer language included in a communication is ineffective in insulating a mortgagee. *See Bell*, 2014 Bankr. LEXIS 4717, at *13. On the other hand, it has been held that the absence of disclaimer language in a communication to a debtor is not a *per se* violation of the discharge injunction, where there is no evidence of coercion or harassment. *See Whitaker*, 2013 Bankr. LEXIS 2328, at *25. The Debtor is correct in one respect: the cases discussing particular disclaimer noticing language focused on the lender's conduct—a fact specific inquiry. However, the notices before the courts in the cases cited by the Debtor did not involve statutorily prescribed language as a precondition to seeking relief *in rem*.[6]

New York Courts routinely dismiss foreclosure proceedings where a mortgage lender does not provide notice in strict compliance with the RPAPL § 1304. *Kearney*, 42 Misc. 3d at 368; *see also*

---

[6] Perhaps the fault here is not with the precise words and procedures mandated by the New York Legislature in enacting RPAPL § 1301 *et seq*. Rather, it may be that the Debtors' Bar needs to counsel clients who have home loans secured by their principal residence—before they file for bankruptcy relief and again after they receive a bankruptcy discharge—to help them understand and anticipate both the types of notices permitted by 11 U.S.C. § 524(j) and those mandated by New York RPAPL § 1304, despite the discharge injunction. Launching a full-scale attack on New York RPAPL § 1304 in federal court is not an effective use of limited judicial resources.

*Deutsche Bank*, 102 A.D.3d at 909; *Aurora Loan Servs.*, 85 A.D.3d at 95; *Callender*, 41 Misc. 3d at 911. The requirements of RPAPL § 1301 were carefully crafted by the Legislature in an effort to protect consumers—by providing homeowners with information and options to avoid losing their homes to foreclosure—and by forcing lenders to communicate with borrowers before commencing a foreclosure action. The notice is not coercive and cannot fairly be read as threatening to proceed against the Debtor personally. The notice is also, and most importantly, a legislatively mandated precondition to commencing a foreclosure action in New York. Because it is clear at the outset that this Court would not accord the Debtor the sanction relief ultimately sought if this case were reopened, the Court finds that the Debtor has not demonstrated cause necessary to reopen under 11 U.S.C. § 350(b). *See Pennington-Thurman*, 499 B.R. at 332; *see also Whitaker*, 2013 Bankr. LEXIS 2328, at *23; *Aurora Loan Servs.*, 85 A.D.3d at 106l. No purpose would be served if this case was reopened. The Debtor's motion to reopen is **DENIED**, under 11 U.S.C. § 350(b).

## VI.
## CONCLUSION

The Court finds that, on the record before it, the Debtor would not be entitled to relief if she was permitted to bring a motion against ESL, requesting sanctions for an alleged violation of the discharge injunction under 11 U.S.C. § 524(a)(2). The Court finds that the Debtor has failed to demonstrate cause to reopen her closed case under 11 U.S.C. § 350(b). The Debtor's motion to reopen this case is **DENIED**.

**IT IS SO ORDERED.**

DATED: April 16, 2015 _____/s/_____
    Rochester, New York     HON. PAUL R. WARREN
                                        United States Bankruptcy Judge